UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

RICHARD LAMAR DEAN,

Plaintiff,

v.

9:08-CV-0797
(DNH/GHL)

DR. PHILLIPS, Facility Doctor / Doctor in Charge,
Hale Creek Correctional Facility,

Defendant.

---

APPEARANCES: OF COUNSEL:

RICHARD LAMAR DEAN, 07-CV-5733
Plaintiff, *Pro Se*
Wyoming Correctional Facility
P.O. Box 501
Attica, NY 14011

GEORGE H. LOWE, United States Magistrate Judge

**ORDER and REPORT-RECOMMENDATION**

This *pro se* prisoner civil rights action, commenced by Richard Lamar Dean ("Plaintiff") pursuant to 42 U.S.C. § 1983, has been referred to me by the Honorable David N. Hurd, United States District Judge, to hear and determine all pretrial matters (of a non-dispositive nature) and issue report-recommendations on all dispositive matters before the Court, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(c). Currently before the Court are (1) Plaintiff's motion for leave to proceed *in forma pauperis*, and (2) his motion for the appointment of counsel. (Dkt. Nos. 2, 3.) For the reasons discussed below, I grant Plaintiff's motion for leave to proceed *in forma pauperis*, and I deny his motion for the appointment of counsel. In addition, I recommend that the Court issue an Order *sua sponte* dismissing his Complaint (pursuant to 28 U.S.C. §§

1915[e][2][B][ii], 1915A) if he does not, within thirty (30) days of the date of the Court's final Order with respect to this Report-Recommendation, file with the Court an Amended Complaint that states a claim upon which relief might be granted.

## I. SUMMARY OF PLAINTIFF'S COMPLAINT

Construed with the extra leniency normally afforded to pleadings drafted by *pro se* civil rights litigants, Plaintiff's Complaint alleges that, between April 10, 2007, and June 27, 2008, Defendant was deliberately indifferent to Plaintiff's serious medical needs in violation of the Eighth Amendment in the following ways: (1) he failed, as the doctor in charge at Hale Creek Correctional Facility, to make sick call visits available to Plaintiff (and other inmates) on Tuesdays, Wednesdays, Saturdays and/or Sundays; (2) he failed to respond, or cause his staff to respond, to Plaintiff's complaints of blurred vision, "black dots" and "floaters" between April 10, 2007, and June 25, 2008; (3) on June 26, 2008, he examined Plaintiff but erroneously told him that his eyes were "normal"; and (4) Defendant waited until Plaintiff's permanent loss of vision on June 27, 2008, to send him to the Albany Medical Center. (Dkt. No. 1, Part 1, ¶¶ 6-7 [Plf.'s Compl.].)

More specifically, Plaintiff alleges as follows:

1. In April of 2007, Plaintiff underwent eye surgery to treat a detached retina in his left eye;

2. After the surgery, his physician advised him that there was a possibility his eye condition could worsen and that, if he ever experienced blurry vision of saw spots or images, he must immediately seek emergency room treatment at a hospital;

3. In November of 2007, Plaintiff was incarcerated in the New York State

Department of Correctional Services ("DOCS");

4. Upon Plaintiff's information and belief, at the time DOCS took Plaintiff into custody, DOCS came into possession of "medical information pertaining to Plaintiff's [eye] condition";

5. On or about March 20, 2008, Plaintiff visited the Medical Clinic at Hale Creek Correctional Facility ("Hale Creek C.F.");

6. At that time, the "doctor in charge" of the Medical Clinic, Defendant, referred Plaintiff to Dr. Franks, in Albany, N.Y., for an eye examination;

7. On or about March 25, 2008, Plaintiff visited Dr. Franks at his office in Stuyvesant Plaza in Albany, N.Y.;[1]

8. After examining Plaintiff's eyes, Dr. Frank told Plaintiff that, although he had 20/20 vision, there were growths under his retina area that needed to be removed;

9. With Plaintiff's consent, Dr. Franks removed the growths through the use of laser surgery during the period of March 25, 2008, to April 7, 2008;[2]

10. After the surgery, Dr. Franks cautioned Plaintiff that, if at any time he experienced blurred vision, black dots or "floaters," he must immediately report to Hale Creek C.F. "emergency clinic," and request to be immediately brought to the emergency room of a hospital;

11. On or about April 10, 2008, Plaintiff began to experience blurred vision, black

---

[1] Plaintiff alleges that he visited Dr. Franks at his office in Stuyvesant Plaza in Albany, N.Y., on or about "March 25, *2007*," which I liberally construe as a typographical error. (Dkt. No. 1, Part 1, ¶ 6 [Plf.'s Compl.] [emphasis added].)

[2] Plaintiff alleges that the laser surgery began on "March *23*, 2008," which I liberally construe as another typographical error. (Dkt. No. 1, Part 1, ¶ 6 [Plf.'s Compl.] [emphasis added].)

dots or "floaters";

12. As a result, Plaintiff immediately asked (one or more unidentified employees of Hale Creek C.F.) to be seen at the Hale Creek C.F. "emergency clinic";

13. However, Plaintiff was informed (by one or more unidentified employees of Hale Creek C.F.) that he could only visit the Hale Creek C.F. Medical Clinic on regular clinic days, which were Mondays, Thursday and Fridays;

14. On each Monday, Thursday and Friday between about April 10, 2008, and about June 25, 2008, Plaintiff "signed up for sick call";

15. However, on each of those days, Plaintiff was denied medical treatment, and was denied a trip to the emergency room of a hospital;

16. On or about June 25, 2008, "Plaintiff filed a grievance which was denied";

17. "[I]mmediately thereafter," Plaintiff appealed the denial of that grievance to the Hale Creek C.F. Superintendent, who affirmed the denial of the grievance;

18. On or about June 26, 2008, Defendant examined Plaintiff and told him that his eyes were normal;

19. In addition, the nurse administrator at Hale Creek C.F. told Plaintiff that, if his eyes were so bad, he could not have found his way to the Medical Clinic;

20. On or about June 27, 2008, Plaintiff lost all vision, except the ability to see images close up;

21. At that time, Defendant sent Plaintiff to the Albany Medical Center Hospital, where he was examined by a Dr. Lopez;

22. Dr. Lopez advised Plaintiff that, as Dr. Franks had cautioned it would, the delay in

obtaining treatment had caused Plaintiff to suffer a loss of vision; and

23. On June 27, 2008, because Hale Creek C.F. could not house a blind inmate, Hale Creek C.F. transferred Plaintiff to Mt. McGregor Correctional Facility for (1) treatment and observation and (2) an immediate transfer to Woodburn Correctional Facility, which possessed facilities for blind inmates. (*Id*. at ¶ 6.)

Based on these factual allegations, Plaintiff asserts three legal claims: (1) negligent denial of medical care and treatment by neglecting to see and treat Plaintiff for the three-month period of April 10, 2008, and June 25, 2008; (2) negligence and malpractice for misdiagnosing Plaintiff's eye condition as "normal" on June 26, 2008, and neglecting to send Plaintiff to the emergency room of a hospital on that date; and (3) intentional infliction of severe and emotional distress due to neglect in responding to Plaintiff's requests for medical care between April 10, 2008, and June 26, 2008. (*Id*. at ¶ 7.) As relief for his injuries, Plaintiff seeks (1) ten million dollars in money damages, and (2) an injunction barring DOCS from further denying him medical care for his eye injury. (*Id*. at ¶ 9.)

## II. DISCUSSION

### A. Motion to Proceed *In Forma Pauperis*

As instructed to do in my Order of July 25, 2008, Plaintiff filed an Inmate Authorization Form on September 12, 2008, reflecting his consent to pay the Court's filing fee of $350 over a period of time. (*See* Dkt. Nos. 2, 4, 7.) Out of special solicitude to Plaintiff, I will excuse the fact that Plaintiff has neglected to provide the officer certification contained at the end of his form motion, and referenced in my order of July 25, 2008. (*See* Dkt. No. 2, Part 1, at 2; Dkt. No. 4, at 1.) After reviewing the entire file in this action, I find that Plaintiff has shown cause for the

granting of his motion to proceed *in forma pauperis*.

For these reasons, I grant Plaintiff's motion to proceed *in forma pauperis* (Dkt. No. 2).[3]

**B. Motion for the Appointment of Counsel**

Courts cannot utilize a bright-line test in determining whether counsel should be appointed on behalf of an indigent party. *Hendricks v. Coughlin*, 114 F.3d 390, 392-93 (2d Cir. 1997). Instead, a number of factors must be carefully considered by the court in ruling upon such a motion. Among these factors are:

> The indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

*Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1341 (2d Cir. 1994) (quoting *Hodge v. Police Officers*, 802 F.2d 58, 61 [2d Cir. 1986]). This is not to say that all, or indeed any, of these factors are controlling in a particular case.[4] Rather, each case must be decided on its own facts. *Velasquez v. O'Keefe*, 899 F. Supp. 972, 974 (N.D.N.Y. 1995) (citing *Hodge*, 802 F.2d at 61).

Here, after reviewing the file in this action, I find that (1) it appears as though, to date,

---

[3] Plaintiff is advised that, although his motion to proceed *in forma pauperis* has been granted, he will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

[4] For example, I note that a plaintiff's motion for counsel must always be accompanied by documentation that substantiates his efforts to obtain counsel from the public and private sector, and such a motion may be denied solely on the failure of the plaintiff to provide such documentation. *See Terminate Control Corp. v. Horowitz*, 28 F.3d 1335, 1341 (2d Cir. 1994); *Cooper v. Sargenti Co., Inc.*, 877 F.2d 170, 172, 174 (2d Cir. 1989) [citation omitted].

Plaintiff has been able to effectively litigate this action, (2) it appears that the case does not present issues that are novel or more complex than those raised in most prisoner civil rights actions, and (3) I am unaware of any special reasons why appointment of counsel at this time would be more likely to lead to a just determination of this litigation. Moreover, I find that Plaintiff's motion for counsel is not, as it must be, accompanied by documentation that substantiates his efforts to obtain counsel from the public and private sector. *See*, *supra*, note 2 of this Order and Report-Recommendation.

For these reasons, I deny Plaintiff's motion for the appointment of counsel (Dkt. No. 3).

**C. Fatal Flaws in Plaintiff's Complaint**

Although Defendant has not yet appeared and moved for the dismissal of Plaintiff's Complaint, the Court is able to (and indeed has a duty to) *sua sponte* address the pleading sufficiency of Plaintiff's *pro se* prisoner civil rights Complaint at this point in time. *See* 28 U.S.C. § 1915(e)(2)(B)(ii) ("[T]he court shall dismiss [a] case [brought by a prisoner proceeding *in forma pauperis*] at any time if the court determines that . . . the action . . . is frivolous or malicious[,] . . . fails to state a claim on which relief may be granted[,] . . . or . . . seeks monetary relief against a defendant who is immune from such relief"); 28 U.S.C. § 1915A(b) ("On review, the court shall . . . dismiss the [prisoner's] complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted . . . .").

**1. Second Element of Eighth Amendment Claim**

As stated above in Part I of this Order and Report-Recommendation, Plaintiff's claim of inadequate medical care arises under the Eighth Amendment. "[A] prison official violates the

Eighth Amendment only when two requirements are met. First, the deprivation must be, objectively, 'sufficiently serious'. . . . [Second,] a prison official must have a 'sufficiently culpable state of mind.'" *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To prevail on a claim of inadequate medical care, a plaintiff must show two things: (1) that he had a *sufficiently serious* medical need; and (2) that the defendant was *deliberately indifferent* to that serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).

With respect to the second prong of the above-stated test (i.e., the mental state of the defendant), it must be remembered that "deliberate indifference describes a state of mind more blameworthy than negligence."[5] Rather, deliberate indifference is a state of mind akin to *criminal recklessness*.[6] What this means is that for an official to possess the requisite mental state to be held liable under the Eighth Amendment, he must "know[] of and disregard[] an excessive risk to inmate health or safety."[7] In other words, he must "both be aware of facts from

---

[5] *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) ("[D]eliberate indifference [for purposes of an Eighth Amendment claim] describes a state of mind more blameworthy than negligence.").

[6] *Farmer,* 511 U.S. at 827 ("[S]ubjective recklessness as used in the criminal law is a familiar and workable standard that is consistent with the Cruel and Unusual Punishments Clause as interpreted in our cases, and we adopt it as the test for 'deliberate indifference' under the Eighth Amendment."); *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996) ("The subjective element requires a state of mind that is the equivalent of criminal recklessness . . . .") [citation omitted]; *accord, Koehl v. Greene*, 06-CV-0478, 2007 WL 2846905, at *17, n. 98 (N.D.N.Y. Sept. 26, 2007) (Kahn, J.), *Richards v. Goord*, 04-CV-1433, 2007 WL 201109, at *15, n.124 (N.D.N.Y. Jan. 23, 2007) (Kahn, J.), *Salaam v. Adams*, 03-CV-0517, 2006 WL 2827687, at *10, n.59 (N.D.N.Y. Sept. 29, 2006) (Kahn, J.).

[7] *Hemmings v. Gorczyk*, 134 F.3d 104, 108 (2d Cir. 1998) ("The required state of mind [for a deliberate indifference claim under the Eighth Amendment], equivalent to criminal recklessness, is that the official knows of and disregards an excessive risk to inmate health or

which the inference could be drawn that a substantial risk of serious harm exists; and he must also draw the inference."[8]

Here, Plaintiff's Complaint (even when construed with the utmost of special leniency) fails to allege facts plausibly suggesting that Defendant in this action knew or had reason to know that Plaintiff would, as he alleges, go blind if he was not sent to the Albany Medical Center immediately upon request between April 10, 2008, and June 26, 2008. (*See* Dkt. No. 1, Part 1, ¶¶ 6-7 [Plf.'s Compl.].) For example, conspicuously missing from Plaintiff's otherwise factually detailed Complaint is any allegation that–after Dr. Franks warned Plaintiff (on April 10, 2008) that he must immediately be brought to the emergency room of a hospital if he experienced blurred vision,"black dots" or "floaters"–Dr. Franks then issued the same warning to *Defendant*. (*Id.*) Also missing is any allegation that Plaintiff conveyed to Defendant Dr. Franks' stern and specific warning at any time between April 10, 2008, and June 25, 2008. (*Id.*)[9] Out of special solicitude to Plaintiff, it *might* be plausible to infer that Plaintiff conveyed to Defendant such a warning during Defendant's examination of Plaintiff's eyes on June 26, 2008. (*Id.*) However, the fact that Defendant allegedly concluded from his examination that Plaintiff's eyes were "normal" undermines a suggestion of intentional or reckless wrongdoing on his part, and at most suggests

---

safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists; and he must also draw the inference.") [internal quotation marks and citations omitted].

[8] *Hemmings*, 134 F.3d at 108.

[9] To the contrary, Plaintiff alleges facts plausibly suggesting that Defendant neglected to communicate with Plaintiff during that time period. (*See* Dkt. No. 1, Part 1, ¶ 6 [Plf.'s Compl.].)

negligence.[10]

Two cases exist finding that a prison doctor did not possess a sufficiently culpable state of mind in analogous circumstances. *See O'Banner v. Bizzell*, 151 F.3d 1033, at *1 (7th Cir. 1998) (affirming dismissal of Eighth Amendment claim by prisoner against prison doctor, arising out of prisoner's blindness due to glaucoma, in part because doctor had concluded that "the pressures [in the prisoner's eyes] were controlled or normal," indicating that he did not know of a substantial risk of serious harm due to glaucoma); *Johnson v. Doe*, 234 F.3d 1273, at *2 (7th Cir. 2000) (affirming dismissal of Eighth Amendment claim by prisoner against prison doctor, arising out of prison doctor's prescribing prisoner insomnia/anxiety medication that exacerbated his glaucoma condition and caused him to suffer blindness, in part because doctor did not learn of prisoner's glaucoma condition from his medical records, indicating that doctor did not know of a substantial risk of serious harm posed by medication).

I note that, while the special leniency normally afforded to the pleadings of *pro se* civil rights litigants may somewhat loosen the procedural rules governing pleadings (as the Second Circuit very recently observed),[11] it does not completely relieve a *pro se* plaintiff of the duty to

---

[10] While a *pro se* plaintiff's characterization of his own legal claims does not limit a court in construing the actual nature of those legal claims (*see Phillips v. Girdich*, 408 F.3d 124, 130 [2d Cir. 2005]), I cannot help but note that Plaintiff repeatedly characterizes his own legal claim as one of "negligence" and "malpractice." (Dkt. No. 1, Part 1, ¶ 7, "First Cause of Action," "Second Cause of Action" [Plf.'s Compl.].)

[11] *Sealed Plaintiff v. Sealed Defendant # 1*, No. 06-1590, 2008 WL 3294864, at *5 (2d Cir. Aug. 12, 2008) ("[The obligation to construe the pleadings of *pro se* litigants liberally] entails, at the very least, a permissive application of the rules governing the form of pleadings.") [internal quotation marks and citation omitted]; *see also Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) ("[R]easonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training . . . should not be impaired by harsh application of technical rules.") [citation omitted].

satisfy the pleading standards set forth in Fed. R. Civ. P. 8, 10 and 12.[12] Rather, as both the Supreme Court and Second Circuit have repeatedly recognized, the requirements set forth in Fed. R. Civ. P. 8, 10 and 12 are procedural rules that even *pro se* civil rights plaintiffs must follow.[13] Stated more plainly, when a plaintiff is proceeding *pro se*, "all normal rules of pleading are not absolutely suspended."[14]

---

[12] *See Prezzi v. Schelter*, 469 F.2d 691, 692 (2d Cir.1972) (extra liberal pleading standard set forth in *Haines v. Kerner*, 404 U.S. 519 [1972], did not save *pro se* complaint from dismissal for failing to comply with Fed. R. Civ. P. 8]); *accord*, *Shoemaker v. State of Cal.*, 101 F.3d 108 (2d Cir. 1996) (citing *Prezzi v. Schelter*, 469 F.2d 691) [unpublished disposition cited only to acknowledge the continued precedential effect of *Prezzi v. Schelter*, 469 F.2d 691, within the Second Circuit]; *accord*, *Praseuth v. Werbe*, 99 F.3d 402 (2d Cir.1995).

[13] *See McNeil v. U.S.,* 508 U.S. 106, 113 (1993) ("While we have insisted that the pleadings prepared by prisoners who do not have access to counsel be liberally construed . . . we have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel."); *Faretta v. California*, 422 U.S. 806, 834, n.46 (1975) ("The right of self-representation is not a license . . . not to comply with relevant rules of procedural and substantive law."); *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983) (*pro se* status "does not exempt a party from compliance with relevant rules of procedural and substantive law") [citation omitted]; *cf. Phillips v. Girdich*, 408 F.3d 124, 128, 130 (2d Cir. 2005) (acknowledging that *pro se* plaintiff's complaint could be dismissed for failing to comply with Rules 8 and 10 if his mistakes either "undermine the purpose of notice pleading []or prejudice the adverse party").

[14] *Stinson v. Sheriff's Dep't of Sullivan Cty.*, 499 F. Supp. 259, 262 & n.9 (S.D.N.Y. 1980); *accord*, *Standley v. Dennison*, 05-CV-1033, 2007 WL 2406909, at *6, n.27 (N.D.N.Y. Aug. 21, 2007) (Sharpe, J., adopting report-recommendation of Lowe, M.J.); *Muniz v. Goord*, 04-CV-0479, 2007 WL 2027912, at *2 (N.D.Y.Y. July 11, 2007) (McAvoy, J., adopting report-recommendation of Lowe, M.J.); *DiProjetto v. Morris Protective Serv.,* 489 F. Supp.2d 305, 307 (W.D.N.Y. 2007); *Cosby v. City of White Plains*, 04-CV-5829, 2007 WL 853203, at *3 (S.D.N.Y. Feb. 9, 2007); *Lopez v. Wright*, 05-CV-1568, 2007 WL 388919, at *3, n.11 (N.D.N.Y. Jan. 31, 2007) (Mordue, C.J., adopting report-recommendation of Lowe, M.J.); *Richards v. Goord*, 04-CV-1433, 2007 WL 201109, at *5 (N.D.N.Y. Jan. 23, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.); *Ariola v. Onondaga County Sheriff's Dept.*, 04-CV-1262, 2007 WL 119453, at *2, n.13 (N.D.N.Y. Jan. 10, 2007) (Hurd, J., adopting report-recommendation of Lowe, M.J.); *Collins v. Fed. Bur. of Prisons*, 05-CV-0904, 2007 WL 37404,

I note further that it has long been understood that a dismissal under Fed. R. Civ. P. 12(b)(6) may be based on either or both of two grounds: (1) a challenge to the "sufficiency of the pleading" under Fed. R. Civ. P. 8(a)(2);[15] or (2) a challenge to the legal cognizability of the claim.[16] Here, I am recommending the (conditional) dismissal of Plaintiff's Complaint on the

---

at *4 (N.D.N.Y. Jan. 4, 2007) (Kahn, J., adopting report-recommendation of Lowe, M.J.).

15 *See* 5C Wright & Miller, *Federal Practice and Procedure* § 1363 at 112 (3d ed. 2004) ("A motion to dismiss for failure to state a claim for relief under Rule 12(b)(6) goes to the sufficiency of the pleading under Rule 8(a)(2).") [citations omitted]; *Princeton Indus., Inc. v. Rem*, 39 B.R. 140, 143 (Bankr. S.D.N.Y. 1984) ("The motion under F.R.Civ.P. 12(b)(6) tests the formal legal sufficiency of the complaint as to whether the plaintiff has conformed to F.R.Civ.P. 8(a)(2) which calls for a 'short and plain statement' that the pleader is entitled to relief."); *Bush v. Masiello*, 55 F.R.D. 72, 74 (S.D.N.Y. 1972) ("This motion under Fed. R. Civ. P. 12(b)(6) tests the formal legal sufficiency of the complaint, determining whether the complaint has conformed to Fed. R. Civ. P. 8(a)(2) which calls for a 'short and plain statement that the pleader is entitled to relief.'").

16 *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) ("These allegations give respondent fair notice of what petitioner's claims are and the grounds upon which they rest. . . . In addition, they state claims upon which relief could be granted under Title VII and the ADEA."); *Wynder v. McMahon*, 360 F.3d 73, 80 (2d Cir. 2004) ("There is a critical distinction between the notice requirements of Rule 8(a) and the requirement, under Rule 12(b)(6), that a plaintiff state a claim upon which relief can be granted."); *Phelps v. Kapnolas*, 308 F.3d 180, 187 (2d Cir. 2002) ("Of course, none of this is to say that a court should hesitate to dismiss a complaint when the plaintiff's allegation . . . fails as a matter of law.") [citation omitted]; *Kittay v. Kornstein*, 230 F.3d 531, 541 (2d Cir. 2000) (distinguishing between a failure to meet Rule 12[b][6]'s requirement of stating a cognizable claim and Rule 8[a]'s requirement of disclosing sufficient information to put defendant on fair notice); *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 379 F. Supp.2d 348, 370 (S.D.N.Y. 2005) ("Although Rule 8 does not require plaintiffs to plead a theory of causation, it does not protect a legally insufficient claim [under Rule 12(b)(6)].") [citation omitted]; *Util. Metal Research & Generac Power Sys.*, 02-CV-6205, 2004 U.S. Dist. LEXIS 23314, at *4-5 (E.D.N.Y. Nov. 18, 2004) (distinguishing between the legal sufficiency of the cause of action under Rule 12[b][6] and the sufficiency of the complaint under Rule 8[a]); *accord*, *Straker v. Metro Trans. Auth.*, 331 F. Supp.2d 91, 101-102 (E.D.N.Y. 2004); *Tangorre v. Mako's, Inc.*, 01-CV-4430, 2002 U.S. Dist. LEXIS 1658, at *6-7 (S.D.N.Y. Jan. 30, 2002) (identifying two sorts of arguments made on a Rule 12[b][6] motion--one aimed at the sufficiency of the pleadings under Rule 8[a], and the other aimed at the legal sufficiency of the claims).

ground that, even though his allegations are factually specific, they allege nothing more than negligence and thus simply are not actionable under Fed. R. Civ. P. 12(b)(6).

Finally, I note that, even if the defect in Plaintiff's Complaint was somehow construed to be one of lack of factual specificity, that rationale for dismissal would still have merit under the circumstances. Rule 8(a)(2) requires that a pleading contain "a short and plain statement of the claim *showing* that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2) [emphasis added]. By requiring this "showing," Fed. R. Civ. P. 8(a)(2) requires that the pleading "give the defendant *fair notice* of what the plaintiff's claim is and the grounds upon which it rests."[17] The main purpose of this rule is to "facilitate a proper decision on the merits."[18] A complaint that fails to comply with this rule "presents far too heavy a burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of [plaintiff's] claims."[19] Here, what is perhaps the most critical fact at issue in this action–how

---

17 *Dura Pharm., Inc. v. Broudo*, 125 S. Ct. 1627, 1634 (2005) (holding that the complaint failed to meet this test) [citation omitted; emphasis added]; *see also Swierkiewicz*, 534 U.S. at 512 [citation omitted]; *Leathernman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 168 (1993) [citation omitted].

18 *Swierkiewicz*, 534 U.S. at 514 (quoting *Conley*, 355 U.S. at 48); *see also Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995) ("Fair notice is that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so it may be assigned the proper form of trial.") [citation omitted]; *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) ("[T]he principle function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial.") [citations omitted].

19 *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996) (McAvoy, J.), *aff'd*, 113 F.3d 1229 (2d Cir. 1997) (unpublished table opinion); *accord*, *Hudson v. Artuz*, 95-CV-4768, 1998 WL 832708, at *2 (S.D.N.Y. Nov. 30, 1998), *Flores v. Bessereau*, 98-CV-0293, 1998 WL 315087, at *1 (N.D.N.Y. June 8, 1998) (Pooler, J.). Consistent with the Second Circuit's application of § 0.23 of the Rules of the U.S. Court of Appeals for the Second Circuit, I cite this unpublished table opinion, not as precedential authority, but merely to show the case's

Defendant (allegedly) knew of and disregarded an excessive risk to Plaintiff's health–is glaringly absent from Plaintiff's Complaint. As a result, such a claim hardly gives Defendant fair notice of the nature and grounds of Plaintiff's claim against him, enabling him to answer the Complaint and prepare for trial. However, I hasten to add that it is not a lack of factual specificity but a lack of cognizability that is the basis of my recommendation.

**2. Physical-Injury Requirement of PLRA**

As indicated above in Part I of this Order and Report-Recommendation, the only intentional claim that Plaintiff asserts is one of "[i]ntentional infliction of severe physical and emotional distress" due to Defendant's neglect in responding to Plaintiff's requests for medical care between April 10, 2008, and June 26, 2008, despite Plaintiff's "complaints and symptoms as documented in [his] medical history." (Dkt. No. 1, Part 1, at ¶ 7, "Third Cause of Action.")

As an initial matter, Plaintiff asserts that claim in a wholly conclusory fashion in that he alleges no facts plausibly suggesting that Defendant acted intentionally. (*See id.* at ¶¶ 6-7.) Rather, as described above in Part II.C.1. of this Order and Report-Recommendation, Plaintiff alleges facts plausibly suggesting (at most) negligence.

Moreover, to the extent that Plaintiff asserts a claim for "emotional distress," he fails to allege facts plausibly suggesting that his "emotional distress" constitutes a "physical injury" for purposes of the Prison Litigation Reform Act of 1995 ("PLRA"). The PLRA provides, in pertinent part, that "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody

---

subsequent history. *See*, *e.g.*, *Photopaint Technol., LLC v. Smartlens Corp.*, 335 F.3d 152, 156 (2d Cir. 2003) (citing, for similar purpose, unpublished table opinion of *Gronager v. Gilmore Sec. & Co.*, 104 F.3d 355 [2d Cir. 1996]).

without a prior showing of physical injury." 42 U.S.C. § 1997e(e). To the extent that Plaintiff is relying on physical manifestations of those emotional injuries, it should be noted that numerous courts have held–correctly, I believe–that physical manifestations of emotional injuries are not "physical injuries" for purposes of the PLRA.[20]

I note that, while (under the circumstances) the PLRA bars only Plaintiff's claim for money damages and not his claim for injunctive relief, his claim for injunctive relief appears moot. The only person against whom Plaintiff asserts claims in this action is Defendant, who works at Hale Creek C.F. However, Plaintiff alleges that he was transferred from Hale Creek

---

20 *See*, *e.g.*, *Davis v. District of Columbia*, 158 F.3d 1342, 1349 (D.C. Cir. 1998) (weight loss, appetite loss, and insomnia caused by emotional distress not "physical injury" for purposes of PLRA); *Cooksey v. Hennessey*, 07-CV-3829, 2007 WL 2790365, at *1 (N.D. Cal. Sept. 20, 2007) ("Physical symptoms that are not sufficiently distinct from a plaintiff's allegations of emotional distress do not qualify as a prior showing of physical injury [for purposes of the PLRA].") [internal quotation marks]; *Johnson v. Georgia*, 06-CV-0049, 2007 WL 2684985, at *3 (M.D. Ga. Sept. 7, 2007) (stress and "a mental disorder" not "physical injury" for purposes of PLRA); *Brown v. Porter*, 01-CV-20957, 2006 WL 2092032, at *2 (N.D. Cal. July 26, 2006) (migraines, dry mouth, and loss of appetite caused by mental health problems not "physical injury" for purposes of PLRA); *Watkins v. Trinity Serv. Group, Inc.*, 05-CV-1142, 2006 WL 3408176, at *4 (M.D. Fla. Nov. 27, 2007) (diarrhea, vomiting, cramps, nausea, and headaches from eating spoiled food on one day not "physical injury" for purposes of PLRA); *Hill v. Williams*, 03-CV-0192, 2005 WL 5993338, at *4 (N.D. Fla. Oct. 14, 2005) (thirty-minute episode of hyperventilation, accompanied by shortness of breath, swollen tongue, pounding heart, and headache, not "physical injury" for purposes of PLRA); *Mitchell v. Newryder*, 245 F. Supp.2d 200, 203, 205 (D. Me. 2003) ("permanent traumatization" not "physical injury" for purposes of PLRA); *Todd v. Graves*, 217 F. Supp.2d 958, 960 (S.D. Iowa 2002) (stress, hypertension, insomnia, dizziness, and loss of appetite not "physical injury" for purposes of PLRA); *Ashann-Ra v. Virginia*, 112 F. Supp.2d 559, 566 (W.D. Va. 2000) (psychosomatic conditions, including sexual dysfunction, caused by emotional distress not "physical injury" for purposes of PLRA); *McGrath v. Johnson*, 67 F. Supp.2d 499, 508 (E.D. Pa. 1999) (inflamation of pre-existing skin condition caused by emotional trauma not "physical injury" for purposes of PLRA); *Cain v. Virgina*, 982 F. Supp. 1132, 1135 & n.3 (E.D. Va. 1997) (depression and painful headaches caused by emotional distress not "physical injury" for purposes of PLRA); *Pinkston-Bey v. DeTella*, 96-CV-4823, 1997 WL 158343, at *3 (N.D. Ill. March 31, 1997) (severe headaches caused by emotional distress not "physical injury" for purposes of PLRA).

C.F. on June 27, 2008. Plaintiff alleges no facts plausibly suggesting that he is likely to be transferred back to Hale Creek C.F.[21] *See Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006) ("In this circuit, an inmate's transfer from a prison facility generally moots claims for declaratory and injunctive relief against officials of that facility.") [citations omitted].[22] Allegations of a likely retransfer may not be based on mere speculation. *Preiser v. Newkirk*, 422 U.S. 395, 403 (1975).

**3. Exhaustion of Administrative Remedies**

For some years now, it has been the majority rule (followed by the Second Circuit) that a prisoner's fulfillment of his duty to exhaust his available administrative remedies under the PLRA is not a fact that the prisoner had to plead in order to state a claim under 42 U.S.C. § 1983 but a fact that may be challenged by a defendant through an affirmative defense (such as on a motion for summary judgment pursuant to Fed. R. Civ. P. 56, or a motion to dismiss for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12[b][1]) established by the PLRA. *See, e.g., Jenkins v. Haubert*, 179 F.3d 19, 28-29 (2d Cir. 1999) ("Because, under the PLRA, a prisoner must exhaust administrative remedies before filing a §1983 suit . . ., a defendant in a prisoner § 1983 suit may also assert as an affirmative defense the plaintiff's failure to comply with the PLRA's requirements."); *Snider v. Melindez*, 199 F.3d 108, 114 (2d Cir. 1999) ("A court may not dismiss for failure to exhaust administrative remedies unless the court determines that

---

[21] To the contrary, he alleges that he was transferred from Hale Creek C.F. because it did not possess facilities for blind inmates. (Dkt. No. 1, Part 1, ¶ 6 [Plf.'s Compl.].)

[22] *Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996) ("If a prisoner is transferred to another prison, his request for injunctive relief against officials of the first prison is moot unless he can demonstrate that he is likely to be retransferred.") [internal quotation marks and citation omitted].

such remedies are available. Snider's answers [on a form complaint] cannot establish that.").

In 2007, the Supreme Court upheld this interpretation of the exhaustion requirement, prohibiting circuits (such as the Sixth, Tenth and Eleventh Circuits) from using exhaustion as a heightened pleading requirement in prisoner civil rights case. *See Jones v. Block*, 127 S. Ct. 910, 914-915, 918-923 (2007). A prisoner has no independent *duty* to plead facts plausibly suggesting that he exhausted his available administrative remedies, in order to state an actionable claim under 42 U.S.C. § 1983. *Block*, 127 S. Ct. at 919-21. "[T]his is not to say that failure to exhaust cannot be a basis for dismissal for failure to state a claim." *Id*. at 921. If a prisoner *chooses* to plead facts regarding exhaustion, and those facts plausibly suggest that he failed to exhaust his available administrative remedies, then his Complaint may be dismissed for failure to state a claim. *Id*. at 920-21.

Simply stated, if a prisoner says nothing or little about exhaustion in his *pro se* civil rights complaint, he is likely protected from a Fed. R. Civ. P. 12(b)(6) motion to dismiss premised on failure to exhaust. However, if he says too much about exhaustion in that complaint so that his non-exhaustion is readily apparent, he may "plead himself out of court," as the saying goes. I find that this is what has happened here.

In his Complaint, Plaintiff alleges that (1) there was a prisoner grievance program at Hale Creek C.F. during the time in question, (2) he presented the facts giving rise to his Complaint to that grievance program; (3) he did so by "fil[ing] a grievance," and (4) the final result of his grievance was the denial of that grievance. (Dkt. No. 1, Part 1, ¶ 4 [Plf.'s Compl.].) These allegations, in and of themselves, do not make his non-exhaustion readily apparent. The problem (from Plaintiff's perspective) is that he goes on to allege that "[o]n or about June 25, 2008,

Plaintiff filed a grievance which was denied." (*Id*. at ¶ 6.) This factual allegation is significant for two reasons.

First, because Plaintiff alleged that he filed *one* grievance arising from the events giving rise to this Complaint, and because he alleges that he filed that grievance on or about June *25*, 2008, he could not (based on his own allegations) have possibly grieved the events that occurred on or about a day later, i.e., on June *26*, 2008. Specifically, those events consisted of Defendant's (1) mis-diagnosis of Plaintiff's eyes as "normal" on June 26, 2008, and (2) neglecting to send Plaintiff to the emergency room of a hospital on June 26, 2008. (*Id*. at ¶ 7, "Third Cause of Action.") Rather, it appears that Plaintiff's grievance of June 25, 2008, complained only of Defendant's neglect in examining Plaintiff between April 10, 2008, and June 25, 2008. (*Id*. at ¶ 6.)

Second, it is implausible to suggest that Plaintiff could have filed an appeal (from the Superintendent's denial of his grievance) with DOCS' Central Office Review Committee ("CORC")–and *heard back from CORC* (as he was required to do before filing suit in federal court)–by the time he signed his Complaint in this action on July 18, 2008. (*Id*. at 10.)

**4. Conclusion**

For all of these reasons, I recommend that the Court issue an Order *sua sponte* dismissing Plaintiff's Complaint (Dkt. No. 1), pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A, if he does not, within thirty (30) days of the date of the Court's final Order with respect to this Report-Recommendation, file an Amended Complaint that states a claim upon which relief might be granted.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion to proceed *in forma pauperis* (Dkt. No. 2) is **GRANTED**; and it is further

**ORDERED** that Plaintiff's motion for the appointment of counsel (Dkt. No. 3) is **DENIED**; and it is further

**RECOMMENDED** that the Court issue an Order *sua sponte* **DISMISSING** Plaintiff's Complaint (Dkt. No. 1), pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A, and Fed. R. Civ. P. 12(h)(3), if he does not, within **THIRTY (30) DAYS** of the date of the Court's final Order with respect to this Report-Recommendation, file an Amended Complaint that states a claim upon which relief might be granted.

**BE ADVISED that any objections to this Report-Recommendation must be filed with the Clerk of this Court within TEN (10) WORKING DAYS, PLUS THREE (3) CALENDAR DAYS from the date of this Report-Recommendation**. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); N.D.N.Y.L.R. 72.1(c); Fed. R. Civ. P. 6(a)(2), (d).

**BE ALSO ADVISED that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material that could have been, but were not, presented to the Magistrate Judge in the first instance.**[23]

---

[23] *See, e.g., Paddington Partners v. Bouchard*, 34 F.3d 1132, 1137-38 (2d Cir. 1994) ("In objecting to a magistrate's report before the district court, a party has no right to present further testimony when it offers no justification for not offering the testimony at the hearing before the magistrate.") [internal quotation marks and citations omitted]; *Pan Am. World Airways, Inc. v. Int'l Bhd. of Teamsters,* 894 F.2d 36, 40 n.3 (2d Cir. 1990) (district court did not abuse its discretion in denying plaintiff's request to present additional testimony where plaintiff "offered no justification for not offering the testimony at the hearing before the magistrate"); *Alexander v. Evans,* 88-CV-5309, 1993 WL 427409, at *18, n.8 (S.D.N.Y. Sept. 30, 1993)

**BE ALSO ADVISED that the failure to file timely objections to this Report-Recommendation will PRECLUDE LATER APPELLATE REVIEW of any Order of judgment that will be entered**. *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of H.H.S.*, 892 F.2d 15 [2d Cir. 1989]).

Dated: September 30, 2008
Syracuse, New York

George H. Lowe
United States Magistrate Judge

(declining to consider affidavit of expert witness that was not before magistrate) [citation omitted]; s*ee also Murr v. U.S.*, 200 F.3d 895, 902, n.1 (6th Cir. 2000) ("Petitioner's failure to raise this claim before the magistrate constitutes waiver."); *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate judge's recommendations are deemed waived.") [citations omitted]; *Cupit v. Whitley*, 28 F.3d 532, 535 (5th Cir. 1994) ("By waiting until after the magistrate judge had issued its findings and recommendations [to raise its procedural default argument] . . . Respondent has waived procedural default . . . objection[].") [citations omitted]; *Patterson-Leitch Co. Inc. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988) ("[A]n unsuccessful party is not entitled as of right to de novo review by the judge of an argument never seasonably raised before the magistrate.") [citation omitted].